## GRAND LODGE COLORED KNIGHTS OF PYTHIAS OF TEXAS v. ADAMS. *

### No. 1898.

Court of Civil Appeals of Texas. Waco.

May 6, 1937.

Rehearing Denied June 3, 1937.

Allan V. McDonnell, of Waco, for appellant.

F. M. Fitzpatrick, of Waco, for appellee.

GEORGE, Commissioner.

Johnie Adams, appellee, surviving widow of Robert Adams, on June 7, 1935, filed suit in the county court of McLennan county, Tex., against Grand Lodge Colored Knights of Pythias of Texas, appellant, a fraternal benefit association, on beneficiary certificate issued by Grand Lodge under date of September 25, 1922, to Robert Adams, assured, Johnie Adams, wife, beneficiary, in the amount of $500, with $75 additional death burial benefit. A trial to the court was had and judgment was rendered in favor of appellee, from which judgment this appeal is taken.

The appellant says (1) the certificate lapsed and became unenforceable for non-payment of quarterly endowment premiums accruing between November 1, 1931, and December 17, 1934; (2) the Grand Lodge was under no obligation to keep the certificate in force by the payment of premiums out of local disability funds after Robert Adams was adjudged insane on April 18, 1930, and became a ward of the state; (3) the beneficiary acquiesced in the fact

*Writ of error dismissed — S.W.(2d) —.

that insanity and becoming a ward of the state disentitled assured to any further disability benefits by paying the endowment premiums accruing between April 18, 1930, and November 1, 1931; (4) that the provisions with reference to disability benefits were discretionary in so far as they affected the local lodge; and (5) that such provisions did not constitute local lodges agents of Grand Lodge for such purpose.

The certificate provided (1) that it was issued and accepted subject to all the laws, rules, and regulations of the Grand Lodge; (2) in consideration of Robert Adams' agreement to pay all local lodge dues, all endowment premiums, and all Grand Lodge taxes and assessments.

Subdivision U, section 2, article 10, of the by-laws of the Grand Lodge, reads as follows: "Lodges shall provide for carrying into effect the beneficial character of the Order by providing for the payment of weekly benefits in case of sickness or disability; provided, that weekly benefits shall not be less than One ($1.00) Dollar per week, and provided further, that if the member is disabled on account of insanity and is being cared for by the State or County, shall not receive said benefits."

Article 213 of the constitution and endowment laws reads as follows: "Each subordinate lodge shall provide for the payment of weekly benefits in case of sickness or disability. The weekly benefits to be not less than One ($1.00) Dollar per week. * * *"

Article 208, Grand Lodge by-laws, provides in part that "it shall be the duty of said committee (Relief) to deduct from the benefits a sufficient amount to keep the brother in good standing and pay same over to the Master of Finance."

Section A, article 213, of the by-laws, reads in part as follows: "A member, while receiving weekly benefits from the lodge, cannot become in arrears so as to debar him therefrom. The Relief Committee being authorized to pay the Master of Finance from the amount drawn for his weekly benefits, a sufficient sum to prevent him becoming in arrears to the lodge."

Robert Adams paid all local lodge dues, all endowment premiums, and all Grand Lodge taxes and assessments accruing up to the time he became totally and permanently disabled and incapacitated to do any kind or character of work in 1925, at which time the local lodge granted him a weekly benefit, and, in addition, began the payment of his Grand Lodge tax and endowment premiums. The local lodge continued to pay the Grand Lodge tax and endowment premiums until April 18, 1930, when he was adjudged insane and placed in the State Insane Hospital at Rusk, Tex. It appears that all relief funds had been exhausted at this time. Johnie Adams paid his Grand Lodge taxes and endowment premiums accruing between April 18, 1930, and October 1, 1931. No further payment of Grand Lodge taxes and endowment premiums were made after that date by either the local lodge or Johnie Adams. Robert Adams died December 17, 1934, in the insane asylum at Rusk, Tex.

■ The original and continuing cause of Robert Adams' disability is not clear from the record. John Hall, local lodge official, testified that Robert Adams became ill or sick in about 1925; that he was confined to his house on several occasions from three to six months at a time; that his disability at the time he was carried to the asylum was insanity. Johnie Adams testified that Robert Adams took sick in 1925 with bronchial pneumonia; that he was never able to work a day after that; that he had been sick ever since, but he was not insane all that time.

We are of the opinion that the testimony does not establish the fact that the disability of Robert Adams was on account of insanity, and for such reason the provisions of the by-laws of the Grand Lodge, with reference to disability on account of insanity, do not apply.

■ We are further of the opinion that the payment of endowment premiums and Grand Lodge taxes, accruing between April 18, 1930, and November 1, 1931, by Johnie Adams, did not waive obligation to continue benefits during disability so as to permit Grand Lodge to lapse certificate for nonpayment of subsequent accruing endowment premiums and Grand Lodge tax. 3 Couch on Insurance § 609, p. 1972; American Nat. Ins. Co. v. Rardin, 74 Okl. 146, 177 P. 601.

■ We are further of the opinion that the hereinabove quoted provisions of the constitution and by-laws constituted Perry Lodge No. 68, Waco, representative and agent of the Grand Lodge in the granting and disbursement of the disability benefits. 29 Cyc. 42.

Are the above-quoted provisions of the constitution and by-laws of the Grand Lodge, with reference to disability benefits, compulsory on a local lodge, and, if so, whether the Grand Lodge is bound to pay its certificate in the event it does not receive certain payments of endowment premiums accruing during disability of a member, whose disability is not caused by insanity? The Grand Lodge and local lodge both recognized the obligation to keep the certificate in force up to date of adjudication of insanity and incarceration of assured, and their contention, as reflected by their brief, is that they in all things assumed and discharged this duty by keeping certificate in force until April 18, 1930, at which time assured became disentitled to any further benefits, for the reason that he had been adjudged insane and had become a ward of the state.

The language of article 213, constitution and endowment laws and articles 10, 208, and 213, by-laws, is that each subordinate lodge shall provide for the payment of weekly benefits in case of sickness or disability, the weekly benefits to be not less than $1 per week, provided the member is not disabled on account of insanity and is being cared for by the state; that it is the duty of the relief committee to deduct from the benefits a sufficient amount to keep the brother in good standing and pay same over to the master of finance, and that no member, while receiving weekly benefits from the lodge, can become in arrears so as to disbar him therefrom. Contracts of this character, which are indefinite as to their meaning, or subject to two constructions, will ordinarily be construed against the insurer and in favor of the assured. American Nat. Ins. Co. v. Jones (Tex.Civ.App.) 83 S. W.(2d) 428. Applying this rule of construction to the contract involved in this case, we think its terms reasonably susceptible of the construction that a compulsory obligation rested upon the local lodge to grant benefits to members who are disabled from any cause other than insanity and continue such benefits so long as the disability continues and to deduct from such benefits sufficient amounts to pay such disabled member's endowment premiums; and that the failure of the local lodge to pay such disabled member's endowment premiums was the failure of the Grand Lodge, and for such reason the Grand Lodge is not in a position to lapse the policy for nonpayment of accruing quarterly endowment premiums. Thompson v. Brotherhood of American Yeomen, 130 Wash. 179, 226 P. 498; 29 Cyc. 177.

The judgment of the trial court is affirmed.

Opinion adopted by the court.